UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JESSICA CRISWELL,
                Plaintiff,

                      **Hon. Hugh B. Scott**

          v.

                      **16CV620V**

                      **Report**
NANCY A. BERRYHILL[1], Acting       **and**
Commissioner of Social Security,       **Recommendation**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 18 (plaintiff), 24 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND[2]

The plaintiff ("Jessica Criswell" or "plaintiff"; also referred to in record as Jessica Lynn Tapia Portillo, R. 295) filed an application for disability insurance benefits on September 8, 2009

---

      [1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).
      [2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 8.

(R. 130). That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ") on May 18, 2011 (R. 100, 130), who considered the case de novo and concluded, in a written decision dated October 28, 2011, that the plaintiff was not disabled within the meaning of the Social Security Act (R. 130). In that first decision, the ALJ found that plaintiff had severe alcohol abuse disorder, but the remaining impairments resulted in no limitations to plaintiff (R. 133-36, 147). Since alcohol abuse was a contributing factor material in determining her disability, the ALJ concluded that plaintiff was not disabled (R. 139). The Appeals Council remanded on April 23, 2013 (R. 145), rejecting plaintiff's work as a taxi driver as being considered past relevant work since plaintiff worked only for three months, and remanding to the ALJ to evaluate plaintiff's past work as a taxi driver (R. 147-48). On remand, the ALJ was to obtain additional evidence on plaintiff's claimed mental impairments, evaluate those claims, and reconsider plaintiff's maximum residual functional capacity (R. 148, 8). If necessary, the ALJ was to obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments, and obtain evidence from a vocational expert (R. 148, 8).

On remand, the ALJ conducted a hearing on November 15, 2013 (R. 36), and rendered another decision on September 26, 2014 (R. 8), finding that plaintiff was not disabled. Here, the ALJ found that plaintiff had not engaged in substantial gainful activity (R. 10) and she did not have any past relevant work (R. 18). The ALJ's decision became the final decision of the Commissioner on June 9, 2016, when the Appeals Council denied plaintiff's request for review (R. 1).

Plaintiff commenced this action on August 1, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 18, 24). The motions finally were deemed submitted on August 16, 2017 (Docket No. 23; see also Docket Nos. 17, 20).

**FACTUAL BACKGROUND**

Plaintiff was born on January 18, 1983 (R. 18), and has a limited education (R. 18). As stated above, on remand the ALJ found that plaintiff had no past relevant work (R. 18), although the ALJ's initial decision said that her past relevant work was a taxi driver (R. 138).

Plaintiff's impairments are anxiety disorder, affective disorder, alcohol abuse, personality disorder, migraine headaches. The ALJ found that these disorders did not meet those for relevant Social Security listings (R. 12; but cf. R. 133, in the first decision finding that plaintiff had impairments, including alcohol abuse disorder, that met listings).

**MEDICAL AND VOCATIONAL EVIDENCE**

On plaintiff's claimed mental disorder impairments, the ALJ found on remand that her activities of daily living had moderate restriction (R. 12-13). The ALJ also found that plaintiff had moderate difficulties in both social functioning and her ability to maintain concentration, persistence, or pace (R. 13). Plaintiff also had no episodes of decompensation (R. 13). Under the "paragraph B" criteria for Listing 12.00 impairments, plaintiff did not have two "marked" limitations or at least one "marked" limitation and "repeated" episodes of decompensation to satisfy "paragraph B" criteria (R. 13). Next, the ALJ concluded that plaintiff failed to establish "paragraph C" criteria (R. 13). Plaintiff did not have repeated episodes of decompensation, or residual disease process that has resulted in marginal adjustment that even a minimal increase in mental demand would be predicted to cause decompensation, or a current history of one or more

3

years' inability to function outside a highly supportive living arrangement (R. 13). Thus, at step two of the five-step analysis (discussed below), the ALJ found that plaintiff did not have an impairment that met or exceeded the relevant Social Security listing.

The ALJ then found that plaintiff has a residual functional capacity to perform a full range of work at all exertional levels (R. 14). The ALJ noted that plaintiff did have non-exertional limitations in that she was capable of performing simple repetitive tasks in an environment that involves no more than occasional contact with coworkers, supervisors, and the public (R. 14). Plaintiff alleged disability due to symptoms of illnesses "which she contends have significantly limited her ability to perform work-related activities and function appropriately in a routine work environment" (R. 14, 295, 335, 376). She asserted that sleep is affected by her impairments (R.14) and that she needed assistance bathing due to her impairments (R. 14). She claims that she does not go into large or crowded stores due to anxiety (R. 14). She also noted that her ability to drive is affected by her impairments and she is limited in her ability to lift, stand, walk, see, and hear (R. 14).

The ALJ concluded, however, that plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms but not to the degree plaintiff claims (R. 15). The ALJ did not credit plaintiff's statements as to the intensity, persistence, and limiting effects of these symptoms (R. 15). First, the ALJ noted that plaintiff received treatment for her mental impairments but early mental status examinations showed that plaintiff's functioning was generally intact (R. 15, 413, 420 (June 9, 2009)). Plaintiff did well on psychotropic medication and therapeutic counseling (R. 15, 667 (June 1, 2010, progress notes)). The ALJ also noted a significant gap in plaintiff's mental health treatment from mid-2011 to early 2013 (R. 15, 666-

4

71, 761). Throughout 2013, plaintiff continued to do well with medication and counseling (R. 15, 701-73), treatment the ALJ categorizes as routine and/or conservative (R. 18).

Second, plaintiff's extensive daily activities—performing chores, shopping, preparing meals, driving, running errands for her grandmother—belie any disabling symptoms or limitations (R. 18, 306-10). She did not manifest debilitating symptoms during her testimony (R. 18).

As for plaintiff's migraine headaches, the ALJ found that she had them but they were well controlled with medication (R. 16, 387-94, 516-33, 655-64, 775-800). Consultative examiner Dr. Nikita Dave examined plaintiff on December 29, 2009, and opined that plaintiff would have moderate limitations for all activity during acute, severe bouts of headaches (R. 16, 448, 452). The ALJ gave Dr. Dave's findings little weight because they were based upon plaintiff's "subjective self-reported symptoms rather than any objective findings" (R. 16).

Meanwhile, medical expert Dr. Sharon Kahn, Ph.D., testified at plaintiff's remand hearing that plaintiff had moderate limitations in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (R. 16), also finding that there was no evidence of periods of decompensation (R. 17). Given Dr. Kahn's expertise in her field and her thorough review of the record, the ALJ gave her opinion great weight (R. 17).

Nevertheless, plaintiff's treating physician, Dr. Edgar Bassig, opined that plaintiff was disabled (R. 543-47, 17, 18). Because Dr. Bassig's own treatment notes and the rest of the medical record did not support a finding of disability, the ALJ gave "very little weight" to Dr. Bassig's opinion (R. 17, 18).

5

Reviewing her Global Assessment of Functioning scores in the 50-55 range (R. 423, 509, 701, 17) but giving them only some weight (R. 17) and her medical record, the ALJ concluded that her mental health care providers "have come to a consensus that she generally has moderate limitations in functioning," consistent with the ALJ's findings (R. 17).

Plaintiff's ability to perform at all exertional levels is compromised by her non-exertional limitations (R. 19). Posing hypotheticals as a claimant with a residual functional capacity similar to plaintiff as well as her age, education, and employment background, the ALJ asked a vocational expert what occupations in the national economy that claimant could perform. The expert opined that such a claimant could be a night janitor (unskilled work, requiring medium exertion) or a warehouse support worker (unskilled work, requiring light exertion). (R. 19.) The ALJ adopted the vocational expert's opinion and concluded that plaintiff is capable of adjusting to other work and was not disabled (R. 19).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.  Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ impermissibly ignored her panic disorder as an impairment at step two of the analysis (Docket No. 18, Pl. Memo. at 16-17; R. 676 (Dr. Kevin Duffy, Ph.D.), 711 (Dr. Oscar Lopez)).  She testified at her second hearing that she had panic attacks and anxiety daily (R. 61; Docket No. 18, Pl. Memo. at 15).  Plaintiff points out courts often remand erroneous findings at step 2 (Docket No. 18, Pl. Memo. at 16-17).  Plaintiff

8

argues that the ALJ had to parse her multiple mental health disorders to determine if each of them was disabling; here, the ALJ inadequately considered her panic disorder (id. at 17). Plaintiff faults the ALJ for giving only some weight to Dr. Duffy's 2013 consultative opinion because the examination was only slightly different from the one in 2009, but the later examination contemplated panic disorders while the former one did not (id.). The ALJ also erred in giving significant weight to the opinion of Dr. Kahn because that opinion was based upon an incomplete record, since Dr. Kahn reviewed only up to Exhibit 33F while plaintiff's panic disorder was documented in Exhibit 34F (id. at 18 & n.2; R. 701, 8, 41-42 (hearing, stating evidence considered)). Plaintiff also contends that this omission of evidence was a legal error since it violated the directive from the Appeals Council on remand that plaintiff's mental impairments be considered, further consideration be given for her residual functional capacity, and appropriate rationale be provided with specific references (Docket No. 18, Pl. Memo. at 18-19; R. 148), see 20 C.F.R. § 404.977(b); e.g., Scott ex rel. Norris v. Barnhart, 592 F. Supp.2d 360, 371 (W.D.N.Y. 2009) (Larimer, J.) ("The ALJ's failure to comply with the Appeal Council's order constitutes legal error, and necessitates a remand") (citations omitted).

      Plaintiff also argues that the ALJ failed to consider properly her migraine headaches, hence rendering findings that were not supported by substantial evidence (Docket No. 18, Pl. Memo. at 19-24). Plaintiff contends that the ALJ assumed that her migraine could be accommodated by limiting her work to simple, repetitive tasks (id. at 20). The ALJ rejected the opinions of Drs. Dave and Bassig on the lack of objective findings for migraine headaches; but plaintiff replies that there is no test for migraine headaches (id. at 20-21). She contends that she

9

had the signs, symptoms, and treatment consistent with severe migraines but the ALJ ignored these (id. at 21).

Defendant counters that the ALJ's step 2 determination that plaintiff did not have a severe limitation that met or exceeded relevant Social Security listings was supported by substantial evidence (Docket No. 24, Def. Memo. at 14-17). Defendant argues that plaintiff has not shown a functional limitation due to her panic disorder (id. at 14-15). She also argues that substantial evidence supports the residual functional capacity assessment made here (id. at 17-19).

Plaintiff replies that the ALJ did not consider her panic disorder in any way at step 2, thus requiring a remand for that consideration to occur (Docket No. 25, Pl. Reply Memo. at 1-4). She reiterates that the ALJ failed to evaluate her migraines (id. at 4-6).

**I.  Mental Disorders Impairments 12.00**

To determine the severity of mental disease impairments under Listings 12.04, 12.06, 12.08, or 12.09, the ALJ needed to consider "paragraph B" criteria, that is, the impairment results in at least two marked restrictions. The restrictions have to be in activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each for an extended duration (R. 12).

Plaintiff contends that her panic disorder was not considered fully (if at all) by the ALJ.

    A.    Panic Disorder

Step two of the five-step analysis is whether plaintiff suffered from a severe impairment, that is having the medical condition and that condition significantly limits the plaintiff's ability to perform basic work activities (R. 9). That step is to screen out de minimis claims that did not

meet the listing for the claimed impairment, Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (Docket No. 18, Pl. Memo. at 17). To do this, the ALJ needed to consider all claimed impairments. Failure to consider all impairments at step two is harmless error if the omission in step two is carried through the remainder of the analysis and the omitted impairment remains unconsidered at subsequent steps, Goodwin v. Berryhill, No. 15CV105, 2017 WL 3446341, at *3 (W.D.N.Y. Aug. 11, 2017) (Skretny, J.) (Docket No. 25, Pl. Reply Memo. at 2). As plaintiff notes, the ALJ does not consider her claim of panic disorder. Defendant counters that plaintiff had to show that her panic disorder limited her in her ability to work (see Docket No. 24, Def. Memo. at 14-17). Plaintiff points to Dr. Duffy's 2013 findings of "significant limitations [that] are attributable to panic disorder" (Docket No. 25, Pl. Reply Memo. at 3; see R. 675). She presented panic disorder as a limitation to warrant the ALJ's consideration whether it met the threshold listing standards or analogue thereto. This warrants remand; plaintiff's motion for judgment on this ground (Docket No. 18) should be **granted**.

      B.      Appeals Council's Remand Order and Legal Error

Plaintiff contends that this matter should be remanded because the ALJ on remand failed to consider all evidence (see Docket No. 18, Pl. Memo. at 18-19). Defendant explains that Dr. Kahn was aware of plaintiff's diagnosis of panic disorder even if she did not see Exhibit 34F (Docket No. 24, Def. Memo. at 16). With the remand recommended above as to consideration of her panic disorder at step two (and subsequently), this matter also should be **remanded** in order for the ALJ to obtain medical expert opinion on the severity of plaintiff's panic disorder, either singly or together with her other mental impairments.

11

## II. Plaintiff's Migraine Headaches

Plaintiff next argues that the ALJ gave short shrift to her complaints of migraine headaches (Docket No. 18, Pl. Memo. at 19-24). Again, defendant argues that plaintiff bears the burden of establishing her disability arising from this ailment (Docket No. 24, Def. Memo. at 17). Defendant contends that the ALJ did consider plaintiff's migraine headaches, their treatment, and improvements in her condition with that treatment (id. at 18). In reply, plaintiff argues that it was error for the ALJ to reject Drs. Bassig and Dave's findings (R. 452, 543) on her migraine headaches based upon otherwise normal musculoskeletal findings in the absence of medical source finding to the contrary (Docket No. 25, Pl. Reply Memo. at 5), see Mnich v. Colvin, 2015 WL 7769236, at *21 (N.D.N.Y. Sept. 8, 2015) (Hummel, Mag. J.) (Report & Rec.), adopted, 2015 WL 7776924 (N.D.N.Y. Dec. 2, 2015).

The ALJ acknowledged that plaintiff had migraine headaches, but found that they were well controlled with medication (R. 16, 448-49, 655, 776, 388-94), including citing to the findings of Dr. Dave (R. 16, 448-49) and Dr. Bassig (R. 16, 655). As plaintiff's headaches worsened, she received medication that the ALJ found was conservative (R. 16; R. 779-82 (treatment notes Elizabeth Smith, NP, Jan. 10, 2013)), noting that her condition improved with changes in her medication (R. 16, 783, 787). The ALJ then concluded that simple, repetitive work accommodates plaintiff's migraines if she limited her work (R. 16). Dr. Dave diagnosed plaintiff as having headaches that were worsening in December 29, 2009, and pending further evaluation and infusion treatment trial (R. 452). Plaintiff points to Dr. Bassig's physical residual functional capacity questionnaire in April 7, 2010 (R. 543, 547, Docket No. 25, Pl. Reply Memo. at 5) which notes plaintiff's symptoms and location of her pain (R. 543). Unlike

12

plaintiff's arguments, the medical record since her examinations by Drs. Bassig and Dave indicate that her migraines were under evolving treatment.

Remand **is not appropriate on this ground** because the ALJ considered plaintiff's migraines, her current treatment, and the results from that treatment. Plaintiff's motion for judgment on this ground (Docket No. 8) should be **denied**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 24) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 18) should be **GRANTED** on the grounds stated in this Report.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 12, 2017